IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA § | |
| § | |
| v.   § | NO.  4:12-cv-402 |
| § | |
| (1) $21,615.00 IN UNITED STATES CURRENCY § | |
| (2) $1,389.00 IN UNITED STATES CURRENCY § | |

### **VERIFIED COMPLAINT FOR FORFEITURE IN REM**

In accordance with Fed. R. Civ. P. Supplemental Rule G(2), the United States brings this complaint and alleges as follows:

### Nature of the Action

1. This is an action to forfeit property to the United States pursuant to 21 U.S.C. § 881(a)(6) and 18 U.S.C. § 981(a)(1)(A).

### Defendant In Rem

2. The defendant property is $21,615.00 in United States Currency that was seized by the Drug Enforcement Administration ("DEA") at the residence of Dr. Tad Taylor ("Taylor") and Chia Jean Lee ("Lee"), located at 700 January Drive, in Plano, Texas ("Taylor's Residence"), in the Eastern District of Texas, and $1,389.00 in United States Currency that was seized by DEA at Taylor's medical clinic located at 1920 N. Collins Boulevard, in Richardson, Texas ("Taylor's Clinic") (collectively, "Defendant Property").  Defendant Property is now in the custody of the U.S. Marshals Service.

### Jurisdiction and Venue

3. The Court has subject matter jurisdiction over an action commenced by the

United States pursuant to 28 U.S.C. § 1345, and over an action for forfeiture pursuant to 28 U.S.C. § 1355(a).  The Court also has jurisdiction over this particular action under 21 U.S.C. § 881(a)(6) and 18 U.S.C. § 981(a)(1)(A).

4. The Court has *in rem* jurisdiction over Defendant Property and venue is proper in the Eastern District of Texas pursuant to 28 U.S.C. § 1355(b)(1)(A) because acts giving rise to the forfeiture occurred in the Eastern District of Texas.

Basis for Forfeiture

5. Defendant Property is subject to forfeiture pursuant to the following statutes:

a. 21 U.S.C. § 881(a)(6), as proceeds traceable to an exchange of money, negotiable instruments, securities and other things of value for a controlled substance in violation of the Controlled Substances Act ("CSA"), 21 U.S.C. § 801 et seq.

b. 18 U.S.C. § 981(a)(1)(A), as property involved in a transaction in violation of 18 U.S.C. §§ 1956 and 1957, or property traceable to such property.

Facts

6. Defendant Property is subject to forfeiture based on the following facts:

a. The CSA governs the manufacture, distribution, and dispensing of controlled substances in the United States.  With limited exceptions for medical professionals, the CSA makes it "unlawful for any person knowingly or intentionally . . . to manufacture, distribute, or dispense, or possess with intent to manufacture, distribute, or dispense, a controlled substance," or to aid, abet or conspire with one or more others to do so.

b. The CSA and its implementing regulations establish a closed system of distribution for drugs and other substances, which are defined by law as "controlled substances"

**Verified Complaint–Page 2**

and assigned to one of five schedules (schedule I, II, III, IV, or V) depending on the potential for abuse, likelihood of physical or psychological dependency, accepted medical use, and accepted safety for use under medical supervision.

    c. Hydrocodone is a generic name for a narcotic analgesic that is found in medications marketed under the brand names Vicodin®, Norco®, and Lortab®. It is classified as a schedule III controlled substance. Alprazolam is a generic name for a benzodiazepine prescription drug that is marketed under the brand name Xanax®. It is classified as a schedule IV controlled substance. Phentermine is a generic name for a schedule IV controlled substance. Promethazine with codeine is a generic name for a prescription drug that is marketed under the brand name Phenergan®. It is classified as a schedule V controlled substance. Hydrocodone, alprazolam, phentermine, and promethazine with codeine are habit forming and are frequently diverted from legitimate medical channels to illegitimate uses.

    d. Under 21 C.F.R. § 1306.04(a), medical practitioners registered with DEA cannot issue a prescription except "for a legitimate medical purpose by an individual practitioner acting in the usual course of his professional practice. The responsibility for the proper prescribing and dispensing of controlled substances is upon the prescribing practitioner, but a corresponding responsibility rests with the pharmacist who fills the prescription. An order purporting to be a prescription issued not in the usual course of professional treatment or in legitimate and authorized research is not a prescription within the meaning and intent of [the CSA] and the person knowingly filling such a purported prescription, as well as the person issuing it, shall be subject to the penalties provided for violations of the provisions relating to controlled substances."

**Verified Complaint–Page 3**

    e. Taylor is a medical doctor licensed by the state of Texas and registered with DEA.  He is not authorized to operate as a pain management clinic in the state of Texas.  He previously owned and practiced at a medical clinic located at 403 West Campbell, Suite 300, in Richardson, Texas, and presently owns and practices at Taylor's Clinic.

<u>Medically Unnecessary Prescriptions for Controlled Substances</u>

    f. On information and belief, Taylor has written numerous prescriptions from his clinics for controlled substances – namely, hydrocodone, alprazolam, phentermine, and promethazine with codeine – outside of the usual course of professional practice and without a medical necessity or legitimate purpose.  On multiple occasions, single individuals brought others to Taylor's medical clinic for controlled substances.  A pattern of prescriptions for those controlled substances among groups often is indicative of a network of illicit distribution.

    g. Working in an undercover capacity, DEA investigators and officers from the police department in Desoto, Texas, purchased prescriptions for hydrocodone, alprazolam, and phentermine from Taylor on multiple occasions between September 23, 2011, and January 11, 2012, at Taylor's medical clinics.  Taylor prescribed the controlled substances outside the scope of a professional medical practice and without a legitimate medical need or purpose.  For example, during one such purchase made on September 23, 2011, an undercover officer told Taylor, "I was having leg pain – I was, I've been on, you know, using the hydrocodone for a while now."  When Taylor asked if the pain was the result of an injury, the officer responded, "no . . . it's just something that kind of makes me feel better and helps me through the day."  Taylor replied, "OK, so what, no injuries?"  The officer then said that he had an injury "way, way back."  When Taylor asked what happened, the officer responded, "What do you need me to

say?" Taylor then explained that he needed to document something in the chart in case "they come out at this, or it's going to be why did you give this?" The officer then stated that he had a bike wreck five years ago, and Taylor responded, "awesome, that's beautiful." Taylor then prescribed hydrocodone and alprazolam. The undercover officers and agents paid between $185 and $280 for each office visit.

    h. Records from the Texas Department of Public Safety indicate that from May 2010 to April 2011, a period of time that largely predates the aforementioned undercover operation by officers from the Desoto Police Department, approximately 76 percent of the controlled substance prescriptions written by Taylor were for hydrocodone, alprazolam and promethazine. These prescriptions largely were for the same quantity and strength as the controlled substance prescriptions written by Taylor to undercover officers between September 23, 2011, and January 11, 2012. Specifically, Taylor wrote 1,916 prescriptions for 192,531 hydrocodone tablets, and approximately 81 percent of those prescriptions were for the highest dosage strength. He wrote 1,876 prescriptions for 136,439 alprazolam tablets, and approximately 88 percent of those prescriptions were for the strength most often diverted to illegitimate use. Hydrocodone, alprazolam and promethazine with codeine were the controlled substances most commonly prescribed by Taylor.

Drug Proceeds and Financial Transactions

    i. On information and belief, Taylor operated cash-only clinics. On information received from Lee, Lee was Taylor's office manager and handled the cash proceeds from Taylor's medical clinics. She routinely brought the cash proceeds to Taylor's Residence and then deposited them in various bank accounts held at banks located in Plano, Texas, in the

Eastern District of Texas. Some portion of the proceeds are used by Lee and/or Taylor at Taylor's Residence for personal expenses. On information and belief, Taylor received mail at Taylor's Residence that pertained to his clinics, and evidence of various financial transactions at multiple banks involving Taylor and his medical practice were found at Taylor's Residence.

## Potential Claimants

7. The only known claimant to Defendant Property is Dr. Tad Taylor, whose interests are represented by attorney Douglas D. Mulder, 2650 KPMG Centre, 717 N. Harwood, LB 126, Dallas, Texas 75201. Chia Jean Lee is a potential claimant to Defendant Property, and she resides with Dr. Taylor at 700 January Drive, Plano, Texas 75025.

## Claim for Relief

8. Defendant Property constitutes proceeds that are traceable to Taylor's efforts to write prescriptions for controlled substances outside of the usual course of professional practice and without a medical necessity or legitimate purpose. Through those efforts, he aided, abetted, and conspired with one or more others to possess with the intent to distribute controlled substances, in violation of 21 U.S.C. §§ 841(a)(1), 2 and 846. Defendant Property also was involved, or is traceable to property that was involved, in transactions in violation of 18 U.S.C. §§ 1956 and 1957.

9. The United States respectfully requests that the Court forfeit Defendant Property to the United States, award costs and disbursements in this action to the United States, and order any other relief that the Court deems appropriate.

        Respectfully submitted,

        JOHN M. BALES
        United States Attorney

        /s/ Richard J. Johnson
        RICHARD J. JOHNSON
        Assistant United States Attorney
        Kansas Bar No. 21353
        1800 Teague Drive, Suite 500
        Sherman, Texas 75090
        (903) 868-9454
        (903) 892-2792 (fax)
        Richard.J.Johnson@usdoj.gov

## VERIFICATION PURSUANT TO 28 U.S.C. § 1746

I, David E. Moser, hereby state that:

1. I am a Special Agent with the Drug Enforcement Administration.

2. I have read this complaint, and the information contained herein is true and correct to the best of my knowledge.

3. The information contained in this complaint comes from the official files and records of the United States, statements from other law enforcement officers, and my investigation of this case.

I state and verify under penalty of perjury that the foregoing is true and correct.

_____ s/A
David E. Moser
Special Agent
Drug Enforcement Administration

Dated: July 2, 2012.